IN RE KAITLYN A.*
(AC 30298)

Beach, Alvord and West, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for

Argued September 16—officially released November 10, 2009

inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Robert L. Skelley,* for the appellant (respondent mother).

*Colleen B. Valentine,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan T. Pearlman,* assistant attorney general, for the appellee (petitioner).

Opinion

WEST, J. The respondent mother appeals from the judgment of the trial court terminating her parental rights as to Kaitlyn A., her minor child.[1] In this appeal we must determine whether the court abused its discretion when it denied the respondent's request for the appointment of new counsel at the commencement of the trial on the termination petition and whether the decision of the trial court terminating her parental rights with respect to her child is factually and legally supported by the record. Specifically, the respondent claims that the court erred by not allowing her a continuance for the appointment of new counsel despite her having informed the court, prior to the commencement of the termination hearing, that she could no longer effectively communicate with her attorney. The respondent also contends that the court improperly found that she failed to achieve a sufficient degree of personal rehabilitation pursuant to General Statutes § 17a-112 (j) (3) (B) (ii). We affirm the judgment of the trial court.

Prior to the child's birth, the respondent had a significant history with the department of children and families (department).[2] The respondent gave birth to the

[1] The court also terminated by consent the parental rights of the minor child's father. Because he has not appealed, we refer in this opinion to the respondent mother as the respondent.

We also note that pursuant to Practice Book § 67-13, the attorney for the minor child filed a statement adopting the brief of the petitioner, the commissioner of children and families.

[2] The petitioner, the commissioner of children and families, also sought termination of the parental rights of the respondent with respect to two of her other children born prior to the child in this appeal. See *In re Kristy A.,* 83 Conn. App. 298, 304, 848 A.2d 1276, cert. denied, 271 Conn. 921,

child on September 5, 2004. At the time of the child's birth, the respondent was on probation.[3] The department became involved with the respondent with regard to the child on December 29, 2005, on the basis of concerns over possible physical neglect of the child. At the time, the department sought to provide services to the respondent to aid her in providing adequate care for the child and to monitor the child's safety and well-being. The department was concerned because of the respondent's long history of untreated substance abuse, the deteriorating and unkempt condition of her home and a report from police that the respondent had left the child alone in the home.[4] On March 3, 2006, the petitioner, the commissioner of children and families, filed with the court a petition for neglect on behalf of the child.

859 A.2d 579 (2004). In the previous proceeding, the court terminated the respondent's parental rights after it found by clear and convincing evidence "that the children had been adjudicated neglected, had been committed to the custody of the petitioner on April 4, 2001 . . .[and] that since the children had been adjudicated neglected, the respondent had failed to achieve such degree of personal rehabilitation as would encourage a belief that within a reasonable time, given the ages and needs for stability and permanency of both children, she could assume a responsible position in their lives.

The court also found that the petitioner had proven by clear and convincing evidence that no ongoing parent-child relationship within the meaning of § 17a-112 (j) (3) (D) existed between the two children and the respondent. Further, the court concluded that to allow additional time for the establishment or reestablishment of a positive parent-child relationship would not be in the best interest of either child." Id., 304–304. Central to the department's previous involvement with the respondent were issues of chronic substance abuse and repeated criminal activity. Id., 299–304.

[3] On October 12, 2001, pursuant to a negotiated plea agreement with respect to a charge of robbery in the first degree, the respondent was sentenced by the court, *Foley, J.*, to five years incarceration, suspended after three years, and five years of probation. See *In re Kristy A.*, 83 Conn. App. 298, 304, 848 A.2d 1276, cert. denied, 271 Conn. 921, 859 A.2d 579 (2004).

[4] The department also had concerns over the respondent leaving the child at a day care provider that it had reported to the department of public health for deplorable conditions. It also received information from the respondent's probation officer that her landlord had notified the probation officer that she was involved in drug activity.

On May 11, 2006, the department received an anonymous telephone call on its hotline concerning the respondent's lack of supervision over the child. It was the third report received by the department regarding the respondent's apparent failure to supervise the child properly. The caller reported that the twenty month old child was outside the home wandering unsupervised and that the caller had retrieved the child from the respondent's backyard and taken her back into the home. Inside the home, the caller found the respondent unconscious and apparently under the influence of alcohol or drugs or both. As a result of this anonymous call, the department sent Vincent Tinnerello, a department social worker, to the respondent's home for an unannounced home visit.

Tinnerello reported that the respondent answered the door in a disheveled state, wearing dirty clothes. The respondent appeared to Tinnerello to be inebriated, her eyes were glassy and her pupils were dilated. She also was swaying from side to side and spoke in incomplete sentences. Tinnerello observed dirty clothing, debris and dog food strewn about the floors, as well as garbage overflowing the trash receptacle in the kitchen. He saw a cigarette lighter placed on the tray of the child's high chair. The child also was in a disheveled state, dressed in dirty, tattered clothing and appeared unwashed, with dirt and grime all over her body. The hems of her pant legs were wet, dirty and excessively worn, leading Tinnerello to conclude that the child had been outside with no shoes on. During Tinnerello's interview with the respondent, the child attempted on several occasions to exit the apartment to leave the building. Tinnerello had to prompt the respondent several times before she retrieved the child and brought her back inside the home.

Tinnerello informed the respondent that in his opinion the home did not appear safe for the child, in part,

because of her incoherent state. In light of her apparent state of inebriation as well as her history of substance abuse, he requested that the respondent submit to an immediate urine screen to detect whether she was under the influence of illegal substances. The respondent refused his request at first; however, after repeated attempts by Tinnerello to gain her cooperation, the respondent agreed to submit to a urine screen. Despite her apparent cooperation, later that evening the respondent refused outright to give a urine sample. The department subsequently determined that it had reasonable cause to believe that the respondent was actively using illegal substances; the respondent was unable to provide adequate supervision for the child; the home was unsafe for the child; and the respondent had two previous terminations of her parental rights with two similarly situated children. As a result, the department invoked a ninety-six hour hold on behalf of the child and removed her from the respondent's home that day. See General Statutes § 17a-101g. On November 29, 2006, the court, *Boland, J.*, adjudicated the child neglected and committed her to the care and custody of the petitioner.[5]

On April 30, 2007, the petitioner filed this termination petition on two grounds. First, the petitioner alleged that the child previously had been adjudicated neglected and that the respondent had failed to achieve such a degree of personal rehabilitation as would

___

[5] The court also ordered specific steps to facilitate the return of the child to the respondent. Those included that the respondent keep all appointments with the department, cooperate with department home visits, keep her whereabouts known to the department, submit to substance abuse assessment and follow recommendations regarding treatment, submit to random drug testing, cooperate with court-ordered evaluations, secure and maintain adequate housing and income from legal sources, not engage in substance abuse, have no further involvement with the criminal justice system, cooperate with her probation officer and comply with conditions of probation and visit the child as often as the department permits.

encourage the belief that within a reasonable time, considering the child's age and needs, she could assume a responsible position in her life. See General Statutes § 17a-112 (j) (3) (B). Second, the petitioner alleged that the respondent was the parent of a child younger than age seven who was neglected or uncared for; she failed, or was unable, to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the age and needs of the child, she could assume a responsible position in the child's life; and that her parental rights as to another child previously had been terminated pursuant to a petition brought by the petitioner. See General Statutes § 17a-112 (j) (3) (E). The trial on the termination petition commenced on May 20, 2008, and was continued on May 21 and August 11, 2008. During the pendency of the termination trial, the respondent was incarcerated as a result of her conviction for a violation of probation. By memorandum of decision filed August 12, 2008, the court, *Randolph*, *J.*, terminated the respondent's parental rights with respect to the child. This appeal timely followed. Further facts will be set forth as necessary.

I

The respondent first claims that the court abused its discretion when it denied her request for the appointment of new counsel at the commencement of the trial on the termination petition in light of her declaration to the court that she could no longer effectively communicate with her court-appointed counsel.[6] The petitioner

___

[6] The respondent also seems to make claims that as a result of the breakdown in the communication between the respondent and Raymond Parlato, her trial counsel, Parlato provided ineffective assistance of counsel to the respondent. At one point in her brief to this court, the respondent claims that Parlato had an "underlying need to be self-protective" because of the potential ramifications of the failure of communication between him and the respondent.

Furthermore, the respondent appears to contend that Parlato's need to be self-protective "colored" his actions on his client's behalf during the

contends that the court did not abuse its discretion when it denied the respondent's request. We agree with the petitioner.

"There is no unlimited opportunity to obtain alternate counsel. . . . It is within the trial court's discretion to determine whether a factual basis exists for appointing new counsel. . . . Moreover, absent a factual record revealing an abuse of that discretion, the court's failure to allow new counsel is not reversible error. . . . Such a request must be supported by a substantial reason and, [i]n order to work a delay by a last minute discharge of counsel there must exist exceptional circumstances." (Citation omitted; internal quotation marks omitted.) *State* v. *David M.*, 109 Conn. App. 172, 177, 950 A.2d 599, cert. denied, 289 Conn. 924, 958 A.2d 154 (2008).

Raymond Parlato was appointed to represent the respondent on October 25, 2006, and continued his representation throughout the trial on the termination petition. Parlato was the third attorney to represent the respondent in the termination proceedings. The trial commenced on May 20, 2008. Preliminarily, the court addressed the respondent concerning a letter she had sent to the court that was dated May 14, 2008. In that

termination trial and, therefore, essentially rendered his assistance ineffective and materially affected the outcome of the termination trial. Last, the respondent also contends, in regard to her claim that the decision of the court terminating her parental rights with respect to her child is not factually and legally supported by the record; see part II of this opinion; that she was "denied the opportunity to provide the court with evidence that would have been sufficiently persuasive to allow a different outcome."

Because the respondent fails to cite any authority or to provide adequate analysis in support of such claims, we decline to review those claims insofar as they concern an assertion of ineffective assistance of counsel. See, e.g., *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 266 Conn. 108, 120, 830 A.2d 1121 (2003) ("We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." [Internal quotation marks omitted.]).

letter, the respondent indicated that she wanted the court to appoint new counsel. The court indicated that it would allow the respondent to place her concerns on the record and, following that, would decide if further inquiry into the matter was required. The respondent first stated that although she had requested in writing that Parlato subpoena certain witnesses, he had not done so. She also indicated that she did not provide Parlato the complete names and addresses for each but that he should have been able to locate them either at their former place of employment—a day care center— or in her former neighborhood.[7] The respondent also contended that she had yet to read a court-ordered psychological assessment report (assessment). She stated that when Parlato had brought it to her at the correction facility, she did not have her glasses with her and could not read it without them. The respondent also claimed that Parlato was rude, had yelled at her and threw up his arms, and, as a result, she was intimidated by him. Because of those incidents, the respondent asserted, she was "not ready to go to trial with [Parlato] and [did not] want him as [her] attorney."[8]

The court first addressed the respondent's contention concerning her request of Parlato to subpoena certain witnesses. After concluding that the subpoenaing of witnesses by Parlato was a matter of strategy, it stated to the respondent, "[i]t may be that you disagree with the strategy, but . . . stating that he hasn't subpoenaed the witnesses that you want subpoenaed doesn't indicate to the court that [that] strategy . . . is not the one you want to pursue." The court also concluded that

[7] The record indicates that there was a day care center next door to the respondent's former home, but it is not clear from the record whether that was the day care center to which the respondent was referring on May 20, 2008.

[8] The respondent further indicated that she sought help in filing a formal complaint against Parlato from representatives of the inmates legal assistance program.

it was too early in the proceeding for it to make a determination concerning the efficacy of Parlato's trial strategy and underscored that it "may not ever be in a position to make a determination that [the respondent's] strategy is a better strategy." The court also stated that the respondent had failed sufficiently to demonstrate to Parlato the substance of the testimony those potential witnesses would offer such that he could base his trial strategy on that potential testimony. Last, the court also noted that "the respondent's witnesses were not going to be called today in any event. If it is determined by . . . Parlato in consultation with his client that certain witnesses, which heretofore had not been thought to be strategically advantageous may become strategically advantageous after today's testimony, then those witnesses may be pursued."

The court then addressed the respondent's contention that she had not been given an opportunity to read her court-ordered assessment. After determining that the respondent still had not read the assessment, the court inquired as to whom the petitioner would be calling as witnesses that day and whether any of those witnesses would be testifying concerning the substance of the assessment. The court then directed the petitioner to call only witnesses who had no testimony relating to the assessment. The court concluded that there was no substantial reason to delay the trial any further to accommodate the respondent beyond that measure. The court also heard from Parlato concerning this matter. Parlato asserted that he had concerns about communicating effectively with the respondent and her lack of cooperation with him, as well as any subsequent grievances she may file as a result of the deterioration of the attorney-client relationship.

"A request for the appointment of new counsel must be supported by a substantial reason and may not be used to cause delay. . . . In order to work a delay by

a last minute discharge of counsel there must exist exceptional circumstances. . . . It is within the trial court's discretion to determine whether a factual basis exists for appointing new counsel. . . . Moreover, absent a factual record revealing an abuse of that discretion, the court's failure to allow new counsel is not reversible error." (Citations omitted; internal quotation marks omitted.) *State* v. *Webb*, 238 Conn. 389, 423–24, 680 A.2d 147 (1996), aff'd after remand, 252 Conn. 128, 750 A.2d 448, cert. denied, 531 U.S. 835, 121 S. Ct. 93, 148 L. Ed. 2d 53 (2000).

Here, in deciding whether to appoint new counsel to represent the respondent, the court stated that its concern was the judicious disposition of the termination trial. The court continued, stating that "[t]here is nothing that has been offered to the court this morning that indicates that . . . Parlato is unable to proceed. There's nothing to indicate that . . . Parlato is unprepared to proceed. The circumstance as it exists today is a circumstance that exists everyday. There's a disagreement as to how to proceed, which witnesses to call, and possibly just raw relations between counsel and the client.

"Those are not extraordinary or exceptional circumstances. The court has fashioned a manner of proceeding which avoids . . . having to call [the] respondent's witnesses, any of them today, and having to call witnesses to respond to the [assessment] today. And even . . . not allowing the [petitioner] to call witnesses to testify about the [assessment].

"Whether [the respondent] decides to communicate with . . . Parlato is her decision. This court is not going to defer the goals of the policy of early permanency because [a] client doesn't like counsel. Hundreds of cases would be deferred daily if that were the case.

So, what [the respondent] decides to do today is up to her, but the matter's going to proceed."

Our review of the record supports the court's factual determination that no substantial reason existed to justify replacement of the respondent's counsel on the eve of trial. We first note that our review of the record reveals that the May 14 letter was the first instance in the nineteen months that Parlato represented the respondent that she made any indication to the court that she had problems with him, his strategy or the sufficiency of his representation of her in the matter. Moreover, the court took pains to inquire into the bases of the respondent's request for new counsel, as well as to fashion suitable remedies for those concerns to which it could respond. The record supports the court's conclusion that the disagreement as to strategy and "raw relations" exhibited in the attorney-client relationship did not rise to the level of a conflict between the respondent and Parlato so great that it resulted in a total lack of communication and prevented an adequate defense.[9] See *State* v. *Williams*, 102 Conn. App. 168, 206, 926 A.2d 7 (court did not abuse discretion when it denied appointment of new counsel when defendant did not demonstrate that conflict was other than disagreement on trial strategy), cert. denied, 284 Conn. 906, 931 A.2d 267 (2007). We conclude, therefore, that the court did not abuse its discretion when it denied the respondent's request for new counsel.

II

Next, the respondent claims that the decision of the court terminating her parental rights with respect to her child is not factually and legally supported by the

[9] The respondent conceded at oral argument before this court that Parlato competently conducted all aspects of the trial, including introducing exhibits into evidence, cross-examining several witnesses and conducting direct examination of the respondent.

record. Specifically, the respondent contends that the court improperly found that she failed to achieve a sufficient degree of personal rehabilitation pursuant to § 17a-112 (j) (3) (B) (ii).[10] We disagree.

Failure to achieve a sufficient degree of personal rehabilitation is one of the statutory grounds on which parental rights may be terminated under § 17a-112 (j) (3). "We have stated that [p]ersonal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent. . . . [Section 17a-112] requires the trial court to analyze the [parent's] rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. . . . Rehabilitate means to restore [a . . . delinquent person] to a useful and constructive place in society through social rehabilitation. . . . The statute does not require [a parent] to prove precisely when she will be able to assume a responsible position in her child's life. Nor does it require her to prove that she will be able to assume full responsibility for her child, unaided by available support systems. It requires the court to find, by clear and convincing evidence, that the level of rehabilitation she has achieved, if any, falls short of that which would reasonably encourage a belief that at some future date she can assume a responsible position in her child's life. . . .

"[T]he adjudicatory determination to be made by the trial court is whether the parent of a child who has been found by the [S]uperior [C]ourt to have been neglected [or] uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life

---

[10] See footnote 5 of this opinion.

of the child. . . . In conducting this inquiry, the trial court must analyze the respondent's rehabilitative status as it relates to the needs of the particular child . . . . The trial court must also determine whether the prospects for rehabilitation can be realized within a reasonable time given the age and needs of the child. . . . What constitutes a reasonable time is a factual determination that must be made on a case-by-case basis. . . .

"Although the standard is not full rehabilitation, the parent must show more than any rehabilitation. . . . Successful completion of the petitioner's expressly articulated expectations is not sufficient to defeat the petitioner's claim that the parent has not achieved sufficient rehabilitation. . . . [I]n assessing rehabilitation, the critical issue is not whether the parent has improved [her] ability to manage [her] own life, but rather whether [she] has gained the ability to care for the particular needs of the child at issue. . . . Thus, even if a parent has made successful strides in her ability to manage her life and may have achieved a level of stability within her limitations, such improvements, although commendable, are not dispositive on the issue of whether, within a reasonable period of time, she could assume a responsible position in the life of her children." (Citations omitted; internal quotation marks omitted.) *In re Alejandro L.*, 91 Conn. App. 248, 259–60, 881 A.2d 450 (2005).

The respondent essentially contends that there was no evidence to support a finding that she was incapable of caring for the needs of her child and that the evidence only indicated, at most, a perception that the respondent was unable "to manage her own life more appropriately." See *In re Amneris P.*, 66 Conn. App. 377, 384, 784 A.2d 457 (2001) (critical issue assessing rehabilitation not whether parent improved ability to manage

own life but, rather, whether parent gained ability to care for particular needs of child).

On the basis of our review of the record, we conclude that the evidence credited by the court supports its conclusion that the respondent failed to attain a degree of rehabilitation sufficient to warrant the belief that within a reasonable period of time, she would be capable of assuming a responsible position with respect to the child. The respondent was given specific steps to take toward reunification with her child from the date the child was adjudicated neglected. See footnote 5 of this opinion. She was repeatedly unsuccessful in her attempts to seek both inpatient and outpatient drug treatment and counseling and failed to comply with or to participate consistently in the programs to which the department referred her. She also failed to curtail her involvement with the criminal justice system as required under the specific steps. On April 30, 2004, the respondent was placed on probation. See footnote 3 of this opinion. Subsequently, she failed to report to her probation officer on sixteen occasions, twice tested positive for cocaine and left the state without her probation officer's permission—each a violation of her probation and, therefore, court-ordered specific step. As a result, the respondent was charged with a violation of probation, to which she pleaded guilty and was sentenced to five years' incarceration, execution suspended after one year. The respondent was incarcerated during the trial on the termination of her parental rights. Moreover, the record reveals that in the months prior to her incarceration, the respondent was homeless.

We conclude that the court's finding, by clear and convincing evidence, that the respondent failed to achieve a degree of rehabilitation as would encourage the belief that within a reasonable period of time she

could assume a responsible position in the child's life was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.