## IN RE ISAIAH J. ET AL.*
## (AC 34668)

Lavine, Robinson and Pellegrino, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest and upon order of the Appellate Court.

Argued November 13, 2012—officially released January 24, 2013**

*William S. Bingham*, for the appellant (respondent mother).

*Susan T. Pearlman*, assistant attorney general, with whom were *Benjamin Zivyon*, assistant attorney general, and, on the brief, *George Jepsen*, attorney general, for the appellee (petitioner).

*Michael F. Miller*, for the minor children.

*Opinion*

LAVINE, J. The respondent mother[1] appeals from the judgments of the trial court terminating her parental rights with respect to four of her minor children pursuant to General Statutes § 17a-112 (j) (3) (B) for failure to achieve such a degree of personal rehabilitation as

---

** January 24, 2013, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The respondent father, whose parental rights were also terminated, is not a party to this appeal. We therefore refer in this opinion to the respondent mother as the respondent.

would encourage the belief that she could assume a responsible position in her children's lives within a reasonable time. On appeal, the respondent claims that (1) the court abused its discretion in denying her request for new trial counsel, (2) she received ineffective assistance of counsel, (3) there was insufficient evidence to sustain the court's finding that she had failed to achieve the requisite degree of personal rehabilitation and (4) she has been denied the right to court-appointed appellate counsel. We affirm the judgments of the trial court.

The record discloses the following procedural history. In December, 2008, the petitioner, the commissioner of children and families, filed four neglect petitions, one for each of the respondent's children, I, A, K, and T. The petitions alleged that the children were being denied proper care and attention, physically, educationally, emotionally and morally, and that the children were being permitted to live under conditions, circumstances or associations injurious to their well-being. In June, 2009, on the first day of the neglect trial, the respondent entered a plea of nolo contendere. The children were adjudicated neglected and the court, *Driscoll, J.*, committed them to the custody of the petitioner.

On January 19, 2010, the petitioner filed a motion to review the permanency plan, calling for termination of the respondent's parental rights and adoption. The respondent objected to that plan. On May 13, 2010, the petitioner filed four petitions to terminate parental rights, one for each of the children, on the ground that the respondent had failed to achieve sufficient personal rehabilitation. See General Statutes § 17a-112 (j) (3) (B) (ii). The petitions alleged that the respondent is the mother of each of the children, that the department of children and families (department) had made reasonable efforts to reunify the children with the respondent and that the respondent was unable or unwilling to

benefit from reunification efforts. On May 14, 2010, the respondent withdrew her objection to the permanency plan, and the court approved the plan and found that the department had made reasonable efforts to effectuate the plan. The petitions for termination of parental rights were tried to the court in February and March, 2012. In a memorandum of decision filed May 11, 2012, the court, *Hon. Michael A. Mack,* judge trial referee, granted the petitions to terminate the respondent's parental rights.

The court made the following findings of fact. The children were born between 2004 and 2008. The December, 2008 filing of the neglect petitions and accompanying orders for temporary custody occurred because the respondent and the father of the children were engaging in substance abuse, the children were being exposed to domestic violence and were being physically neglected, and the father was involved in criminal activity.

From December 8, 2008, to March 27, 2009, pursuant to the orders of temporary custody, the children were in the care of a maternal aunt. Starting on March 27, 2009, the children were placed together in a department licensed foster home, and the foster parents had been seeking to adopt all four children at the time of trial.

Pursuant to § 17a-112 (j) (1), the court found that the department made reasonable efforts to locate the respondent and to reunify the children with the respondent, individually and collectively. The court found that the respondent was not able or willing to benefit from those efforts. On June 1, 2009, the respondent agreed to specific steps that she was provided, which were necessary for her to reunite with the children. Initially, the respondent cooperated with appointments that the department set, but then her progress deteriorated. The

respondent submitted to two substance abuse evaluations, and both recommended intensive outpatient treatment or partial hospitalization. She did not comply with those recommendations. She agreed to twice weekly random urine screens, yet she submitted to only seventeen of a possible 120 screens. The respondent did not follow through with parenting classes or a program with United Community and Family Services, nor did she keep her whereabouts known to the department, frequently moving without notifying the department. The respondent revoked all of the confidentiality releases that she had given, preventing the department from speaking to the service providers to which she had been referred.

Although she denied any ongoing relationship with the children's father, in 2010 she became pregnant with her fifth child by that father. She fled Connecticut to avoid the department's involvement with the birth of the child, who would be named S. She delivered S in Georgia. S was born testing positive for amphetamines, barbiturates and opiates. As a result of the drug exposure, S displayed symptoms of drug withdrawal and required intensive early care. The Georgia child protective agency seized S at birth, and on December 8, 2011, a Georgia court terminated the respondent's parental rights as to S.

Although the respondent was offered weekly visitation until the court suspended her visits in December, 2011, the respondent last visited with the children on May 13, 2011. She ceased regular contact with the department in early June, 2011. On September 15, 2011, the respondent was arrested for prostitution and possession of narcotics. On February 10, 2012, her rearrest was ordered for failure to appear.

The court made findings with respect to the children as well. The children had been out of the care of the

respondent since December 8, 2008, and had lived in the care of their foster family since March, 2009—at the time of trial in early 2012, the children had been in their care some thirty-eight months. When the children arrived in the care of the foster family in March, 2009, the children were not used to structure or routine, had had no preschool and lacked a grasp of basic information and skills. It had taken I half a year to begin to perform at goal level in school. At the time of trial, A and K were performing well in school, and T was in preschool. All of the children participated in extracurricular activities. The court found that "all four children [were] doing exceptionally well in th[e] foster home."

The court credited and incorporated into its written decision a report and testimony from I's and K's therapist, Sharon Kutner, who is a registered nurse and social worker. Among other things, her report and testimony detailed certain statements by the respondent as reported to Kutner through the children. Specifically, the respondent requested that the children lie about the foster parents' behavior to get them in trouble with the department, such as to report that the foster mother hit I, even though that was not true. The respondent also promised the children toys and candy when they were reunited. Kutner concluded that the respondent's emotional state at the end of visitations caused the children to feel sad and overly responsible for her.

The court also made special note of testimony from Ronald Anderson, a court-appointed psychological evaluator of the respondent and children. Anderson testified that the respondent had not taken any appropriate steps toward rehabilitation and that she evinced a pattern of consistent irresponsibility.

By clear and convincing evidence, the court found that the children had been found neglected in a prior proceeding and that, as to each child and as to the

children collectively, the respondent had failed to achieve such degree of rehabilitation so as to encourage the belief that she could assume a role as a responsible parent within a reasonable period of time. See General Statutes § 17a-112 (j) (3) (B). The court considered the age and needs of each child and that the children had been in the custody of the petitioner for forty-one months.

In the dispositional phase of the proceedings, the court made the seven findings required by statute. See General Statutes § 17a-112 (k). The court found that I was born October 27, 2004, K and A were born December 1, 2005, and T was born April 18, 2008. The court found that the respondent was offered substance abuse evaluation and treatment, as well as random drug screens and hair analysis toxicology, individual therapy, parenting education, a psychological evaluation, the Thames River Family Program, and supervised visitation and transportation. The respondent refused some of these services, and she started others but failed to complete them. The respondent was generally consistent in exercising visitation rights prior to May, 2011, but many of these visits were problematic for the children. The services offered were appropriate and timely, but the respondent failed to avail herself of most of them.

The court noted that on December 8, 2008, and June 1, 2009, it ordered specific steps for the respondent. Despite the department's persistent efforts, the respondent failed to engage in the steps to accomplish reunification with the children, collectively or individually. The court noted the finding made on November 29, 2011, by Judge Driscoll that reunification efforts were no longer appropriate. The court found that the respondent made only minimal efforts to adjust her circumstances, conduct or condition to make it in the best interest of the children to return to her.

Additionally, the court made findings as to the children's emotional ties. All of the children were bonded to the respondent. They also were bonded to their foster parents, whom they sought out for comfort and affection; the bond was strong and appropriate. I, A and K had mixed feelings about adoption while T was too young to appreciate the concept. All of the children assimilated well into the foster home, where they had lived for three years and nine months, and all reported they were happy living with their foster parents. The children had a photo album of their biological parents, and on occasion they referred to the album before resuming normal childhood activities within the household. The court found that no one had prevented the respondent from maintaining a meaningful relationship with the children.

The court concluded that it was in the best interest of each child that the respondent's parental rights be terminated. Further facts and procedural history are set forth as required.

I

The respondent's first claim is that the court improperly denied her request for new counsel on the second day of trial. Specifically, the respondent argues that the court abused its discretion in denying her request because both the respondent and her attorney represented that there was a breakdown in the attorney-client relationship. We disagree with the respondent's claim.

"There is no unlimited opportunity to obtain alternate counsel. . . . It is within the trial court's discretion to determine whether a factual basis exists for appointing new counsel. . . . [A]bsent a factual record revealing an abuse of that discretion, the court's failure to allow new counsel is not reversible error. . . . Such a request must be supported by a substantial reason and, [i]n order to work a delay by a last minute discharge of

counsel there must exist exceptional circumstances." (Internal quotation marks omitted.) *In re Kaitlyn A.,* 118 Conn. App. 14, 21, 982 A.2d 253 (2009). "A request for the appointment of new counsel . . . may not be used to cause delay." (Internal quotation marks omitted.) Id., 23.

The following facts and procedural history are relevant to resolving this claim. On November 29, 2011, the respondent's first court-appointed counsel, Ryan D. Ziolkowski, reported to the court that for the previous five months he had had insufficient contact with the respondent to provide effective legal assistance. Accordingly, Ziolkowski filed a motion to withdraw due to a breakdown in the attorney-client relationship. The court granted the motion and ordered that new counsel be appointed, and Jean Park was appointed as the respondent's second counsel. Park later filed a motion to withdraw, citing the same reasons as Ziolkowski— that there was no attorney-client relationship. On February 28, 2012, the first day of trial, Park marked off her motion, but reclaimed it the following day. At that time, the respondent also requested the court to appoint her another attorney.

The court heard extensive argument on this issue from the respondent and Park, and asked each a number of questions. The respondent indicated that she was not satisfied with Park's performance in settlement negotiations and cross-examination, Park's reluctance to file a motion unrelated to the present appeal and Park's preparation for the case. The respondent extensively complained about the particulars of what she wanted in settlement negotiations but was not offered. Park indicated her frustration with unsuccessful attempts to contact the respondent.

The petitioner's counsel presented his observations to the court as well. He pointed out that Park's conduct

and preparation before trial commenced was consistent with that of "a very good trial attorney . . . ." The petitioner objected to the motion to withdraw as the trial had begun, citing *State* v. *Turner*, 133 Conn. App. 812, 37 A.3d 183, cert. denied, 304 Conn. 929, 42 A.3d 390 (2012).

The court concluded that adding another attorney would needlessly delay the proceedings because the respondent failed to make herself available to communicate with Park.[2] The court conditionally denied the respondent's request for new counsel; the court indicated that it was amenable to approving a change in counsel so long as the trial could proceed. The court gave the respondent until March 8, 2012, to secure the services of a private attorney or to bring in her previous

---

[2] The following colloquy occurred during the court's consideration of this issue:

"The Court: But what efforts did you make to sit down with your lawyer to prepare for this case? . . .

"[The Respondent]: [T]he whole sitting down and doing that—no. . . . I understand—no, I haven't. . . .

        \* \* \*

"The Court: I'm . . . interested in . . . whether or not this—this relationship . . . has broken down. . . . I haven't heard that it has. You didn't get in touch with [Park]. [Park] tried to prepare a case from scratch because this is your second lawyer. . . . It is a—a large file, but the issues are all contained . . . in one or two exhibits here, as to what's going on in this case. And I haven't heard anything that would indicate that there should be yet another or a third lawyer, plus the fact that . . . you're on your second lawyer now, and this case is on trial, and at some point we are going to address the permanency of these children and the time is now, and you knew this case was coming up.

        \* \* \*

"[G]etting your case properly before the [c]ourt . . . is extremely difficult when you never met with [Park] and . . . you never gave her a chance to put it together again. . . .

"[T]here's no question in my mind that if there were a third lawyer involved in this, it wouldn't be any different, because we went through this with Attorney Ziolkowski. We've gone through it now with [Attorney] Park. We would go through it with Attorney X again . . . . I haven't heard anything magic about why there should be another lawyer here. She's doing her job. You didn't do yours, but she's doing her job."

attorney, Ziolkowski, if he and Park reached an agreement acceptable to the public defender's office. The court pointed out that the respondent could, if she so wished, represent herself. On March 8, 2012, the respondent was still represented by Park.

Our review of the record persuades us that the court did not abuse its discretion in denying the respondent's request for new counsel. The record amply supports a conclusion that there was no substantial reason to appoint new counsel because a new attorney would not have made a difference; the lack of communication in the attorney-client relationship was due to the respondent's conduct. The respondent argues that because she and Park both submitted that there was a breakdown in the attorney-client relationship, the court improperly denied her request for new counsel. But such a mutual representation is not dispositive; rather, it is within the trial court's discretion to determine whether a factual basis exists for appointing new counsel. See *In re Kaitlyn A.*, supra, 118 Conn. App. 21. The respondent's chief issue was that she was not offered what she wanted in settlement negotiations. See id., 25 (disagreement as to trial strategy did not warrant appointment of new counsel). Further, the court went to pains to specify reasonable conditions that would enable the respondent to be represented by another attorney, and the respondent did not take advantage of that opportunity.

## II

The respondent argues that she received ineffective assistance of trial counsel. The petitioner contends that the respondent has failed to show that her counsel's performance prejudiced her by contributing to the termination of her parental rights. We agree with the petitioner.[3]

---

[3] The record does not have requisite factual findings, like those present when we review a petition for a writ of habeas corpus alleging ineffective assistance of counsel. See *In re Dylan C.*, 126 Conn. App. 71, 91 n.9, 10

"In determining whether counsel has been ineffective in a termination proceeding . . . [t]he respondent must prove that [counsel's performance] . . . contributed to the termination of parental rights. . . . A showing of incompetency *without a showing of resulting prejudice . . . does not amount to ineffective assistance of counsel.*" (Emphasis added; internal quotation marks omitted.) *In re Dylan C.*, 126 Conn. App. 71, 91, 10 A.3d 100 (2011). Although the respondent claims prejudice in vague terms, identifying more than a dozen supposed shortcomings of her trial counsel, she does not *specify* any particular prejudice. For example, the respondent alleges that trial counsel failed to present evidence rebutting Kutner's report and testimony. Yet, the respondent does not identify any evidence that could have rebutted that testimony. The respondent's claim that she received ineffective assistance of trial counsel is without merit.

### III

Next, the respondent claims that the evidence presented at trial is insufficient to support the court's judgment terminating her parental rights. Specifically, the respondent claims that there was insufficient evidence to support a finding by clear and convincing evidence that the respondent had failed to achieve sufficient personal rehabilitation pursuant to § 17a-112 (j) (3) (B) (ii), that it was in the best interest of the children not

---

A.3d 100 (2011). As this court previously has observed, "[w]e know of no procedural mechanism within a termination of parental rights proceeding that provides for the creation of a record to determine the effectiveness of counsel." Id. The present case is similar to *State* v. *Anonymous*, 179 Conn. 155, 425 A.2d 939 (1979). In each case, the appellant provided a list of acts of omission and commission committed by trial counsel and no factual findings as to those claimed failures. See id., 160–61. Like the record in *Anonymous*, the record in the present case is inadequate. Nevertheless, inasmuch as we consider the record before us, the respondent has failed to demonstrate prejudice.

to allow the respondent more time for rehabilitation, and that the department's efforts at reunification were sufficient and the department did not hinder those efforts. We disagree.

"An appeal based on the sufficiency of evidence to support a factual finding carries a legal and practical restriction to review. The function of an appellate court is to review, and not to retry, the proceedings of the trial court. . . . Further, we are authorized to reverse or modify the decision of the trial court only if we determine that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that its decision is otherwise erroneous in law." (Internal quotation marks omitted.) *In re Dylan C.,* supra, 126 Conn. App. 87.

"Personal rehabilitation . . . refers to the restoration of a parent to his or her former constructive and useful role as a parent [and] requires the trial court to analyze the [parent's] rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. . . . The statute does not require [a parent] to prove precisely when she will be able to assume a responsible position in her child's life. Nor does it require her to prove that she will be able to assume full responsibility for her child, unaided by available support systems. It requires the court to find, by clear and convincing evidence, that the level of rehabilitation she has achieved, if any, falls short of that which would reasonably encourage a belief that at some future date she can assume a responsible position in her child's life." (Internal quotation marks omitted.) Id., 88.

In her brief of this claim, the respondent addresses none of the evidence presented at trial with specificity. The respondent's argument is a series of statements paraphrasing the nature of the claim. Because "[c]laims

on appeal that are inadequately briefed are deemed abandoned"; (internal quotation marks omitted) *State v. Clark*, 255 Conn. 268, 281 n.30, 764 A.2d 1251 (2001); we are not required to review this claim.

Even if we were to afford the respondent's argument the most generous possible reading, a conclusion that the findings of the court are not clearly erroneous is ineluctable. We have reviewed the evidence before the court and the court's thorough and thoughtful memorandum of decision. The clear and convincing evidence before the court supports the findings recited at the beginning of this opinion.

## IV

Finally, the respondent claims that she was denied her right to a court-appointed appellate counsel pursuant to General Statutes § 45a-717 (b). Specifically, the respondent argues that there was no judicial review of a determination by the office of the chief public defender that the respondent's appeal was without merit and, accordingly, no judicial review of a determination that she should not receive the services of court-appointed counsel. See Practice Book § 79a-3 (c) (2).[4] She contends that there should have been a brief to the court justifying that determination. As persuasive

[4] Pursuant to General Statutes § 51-14 (a), Practice Book § 79a-3 was adopted by the Supreme Court and this court to take effect on February 1, 2012.

Practice Book § 79a-3 provides in relevant part: "(b) Appeal by indigent party. If a trial attorney who has provided representation to an indigent party through the Division of Public Defender Services declines to pursue an appeal and the indigent party expressly wishes to appeal, the trial attorney shall . . . file . . . a sworn application signed by the indigent party for appointment of an appellate review attorney . . . .

"(c) Review by the Division of Public Defender Services . . . (2) If the reviewing attorney determines that there is no merit to an appeal, that attorney shall . . . inform the party, by letter, of the balance of the time remaining to appeal as a self-represented party or to secure counsel who may file an appearance to represent the party on appeal at the party's own expense. . . ."

authority, the respondent cites *Anders* v. *California*, 386 U.S. 738, 744, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).[5] We do not agree.

*Anders* v. *California*, supra, 386 U.S. 739, "concerned . . . the extent of the duty of a court-appointed appellate counsel to prosecute a first appeal from a criminal conviction, after that attorney has conscientiously determined that there is no merit to the indigent's appeal." Pursuant to the sixth and fourteenth amendments to the United States constitution, in the criminal context, "[w]henever appointed counsel seeks to withdraw from his [or her] role as appellate advocate, he [or she] is required . . . to file a brief referring to anything in the record that might arguably support the appeal." (Internal quotation marks omitted.) *Paulsen* v. *Manson*, 193 Conn. 333, 340, 476 A.2d 1057 (1984). A mere "no-merit letter . . . do[es] not reach that dignity." *Anders* v. *California*, supra, 744.

The respondent provides no legal basis to support her argument that a statutory right to counsel in a termination of parental rights proceeding carries with it the same sixth amendment protections accorded to a criminal proceeding. A parent's right to effective assistance of counsel in a termination of parental rights proceeding is not rooted in the federal or state constitutions. See generally General Statutes § 45a-717 (b); see also *State* v. *Anonymous*, 179 Conn. 155, 159, 425 A.2d 939 (1979); *In re Dylan C.*, supra, 126 Conn. App. 91 n.9. Accordingly, her claim is without merit.

The judgments are affirmed.

In this opinion the other judges concurred.

[5] For clarity, we note that the respondent does not claim that she was deprived of procedural due process, nor does she claim that Practice Book § 79a-3 conflicts with § 45a-717 (b).