******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE DANYELLAH S.-C. ET AL.*
(AC 38710)

Beach, Sheldon and Gruendel, Js.

*Argued May 9—officially released August 2, 2016***

(Appeal from Superior Court, judicial district of New
London, Child Protection Session at Waterford,
Driscoll, J.)

*Matthew C. Eagan*, assigned counsel, with whom was *Michael S. Taylor*, assigned counsel, for the appellant (respondent mother).

*Daniel M. Salton*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, *Gregory T. D'Auria*, solicitor general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*Ellin M. Grenger*, for the minor children.

*Opinion*

GRUENDEL, J. The respondent mother appeals from the judgments of the trial court terminating her parental rights with respect to her four minor children.[1] On appeal, the respondent claims that the court improperly denied her midtrial request to remove her court-appointed counsel.[2] We disagree and, accordingly, affirm the judgments of the trial court.

In its oral memorandum of decision, the court found the following facts. The respondent is the mother of four minor children. Prior to the birth of their first child, both the respondent and the father "were involved with the Department of Children and Families (department). . . . [The respondent] was the subject of ten department referrals as a child. [The respondent] and the father began their troubled relationship in 2002. The department has been involved with them since 2004 for referrals for [their] children's exposure to domestic violence, substance abuse, and criminal activity, as well as inadequate supervision and mental health concerns.

"On May 20, 2013, the [petitioner, the Commissioner of Children and Families] filed neglect petitions on behalf of [the minor children] for the above noted concerns . . . . On March 20, 2014, [the respondent] filed a plea of nolo contendere, and the father failed to appear. The children were adjudicated neglected and placed under protective supervision for six months in [the respondent's] custody. Specific steps were set for [the respondent]. . . . The steps were designed to ameliorate the department's concerns . . . and to allow for family integrity.

"On March 21, 2014, in keeping with her specific steps, [the respondent] was referred to the intensive family preservation program, an in-home service which was essential. [The respondent] missed two consecutive [department] appointments for home visits to discuss intake to the program. The intensive family preservation worker and the department made an unannounced home visit with [the respondent] and were able to schedule an intake appointment for the program. [The respondent] was not home for the scheduled appointment and was nonresponsive to subsequent efforts to engage her in this vital service.

"Meanwhile, the father, in contravention to his specific steps to maintain sobriety, tested positive for cocaine . . . . He was referred to a higher level of drug treatment but was incarcerated on April 28, 2014. . . . On May 7, 2014, the [petitioner] filed a motion to open and modify disposition seeking commitment of the children. On May 23, 2014, neither parent appeared in court, and the motion was granted. The children were committed to the [custody of the petitioner] and have remained committed since that date. [The respondent] arrived late at court and claimed no knowledge as to the chil-

dren's location. The children were located, secured and . . . have remained in the department's care since [that time].

"Specific steps for [the respondent and the father] remained in effect [that] required them in part to advise the department of potential family placement resources. [Their] mutual judgment and concern for their children's well-being were demonstrated by their joint nomination of a paternal uncle as a custodial resource [who] was disqualified shortly thereafter by his incarceration on narcotics charges.

"Following the commitment, both parents were given reunification steps to follow, which included the responsibility to maintain contact with [the department], to cooperate with individual counseling and substance abuse evaluation and treatment, to remain sober, to obtain a lawful income and housing, to avoid criminal activity and to visit with the children. Following the removal of the children, [the respondent] disappeared. She resurfaced in an administrative case review meeting held at [the department two months later] on July 23, 2014 . . . . [The respondent] next came to the department's attention when she was incarcerated in Connecticut in October of 2014 on drug related charges. Substance abuse had been an area of significant concern for [the respondent]. [She] reported having prescriptions for multifarious prescription pain killers and thwarted the department's efforts to establish the need for and the credibility of those claims. . . . [The respondent] agreed to [substance abuse] testing, yet never submitted to a test. Her excuses were myriad, but in essence amounted to an inability to get to [the] testing. . . . [The respondent] still has not submitted to substance abuse testing and treatment of an adequate nature. . . .

"[The respondent] has no independent stable housing. She is dependent upon the charity of a friend for her housing. She has no identified income. Most significantly, however, is the fact that [the respondent] has only visited with her children two times since they were committed to the department. She does not contact the children through authorized channels. She knows the foster mother, as it is a relative foster placement, and does not contact the children through the foster parent. . . .

"Dr. [Kelly F.] Rogers, [the court-appointed psychological evaluator] noted that [the respondent] has a passive-aggressive streak which expresses itself indirectly in negativism, sarcasm and passive aggression that usually served to worsen her associations, particularly those with authority figures, and that this is a strong pattern quite resistant to change. [The respondent] continually appears late for meetings or does not come at all. She does not cooperate with the department [workers] in terms of responding to them. This is all in

keeping with [Rogers'] finding that [the respondent] resists authority figures. . . . [Rogers] opined that she may meet the criteria for several personality disorders, but at the least a personality disorder not otherwise specified with histrionic borderline narcissistic and passive aggressive traits. . . .

"[The respondent] has not cooperated with . . . treatment, and the court finds that given her failure to visit [the minor children], her arrest on narcotics charges, her failure to establish a stable income and housing and her lack of cooperation with counseling, the department has established . . . that it made reasonable efforts to reunify with [the respondent], that [the respondent] is unwilling or unable to benefit from those efforts, that her children were previously found to [have been] neglected and that she has failed to achieve the degree of personal rehabilitation that would encourage the belief that within a reasonable time she could assume a responsible position in the lives of her children. Her two oldest children had special needs, and were in therapy and were failing in school while in the care of [the respondent]. They have improved dramatically since removal from [the respondent's] care. The court has no reasons to believe that these improvements would remain if returned to [the respondent] at any time. . . .

"With respect to [the issue of] abandonment . . . [the respondent] responded to the commitment of her children by disappearing for a two month period. Since that date, she has not maintained contact with the children and has maintained irregular and inadequate contact with the department. Most importantly, she has visited her children only two times. Despite being noted to be in the area several times, she has not attempted to visit her children through permitted channels. . . .

"[I]mmediately prior to their commitment, the oldest children were exhibiting behavioral and serious educational deficiencies mostly rooted in their extensive truancy. Since being removed from [the respondent's] custody . . . the children have blossomed in the care of their foster mother. They are doing well academically. They attend school regularly. They are not having behavioral issues and they are both in counseling and thriving. . . .

"The court finds that [the respondent] abandoned them and has demonstrated little or no interest in the children. She certainly is not in a position to provide for their growth, development, well-being, nor is she capable of providing continuity and stability." The court thus found by clear and convincing evidence that termination of the respondent's parental rights was in the best interest of the children. Accordingly, the court rendered judgments terminating her parental rights pursuant to § 17a-112 (j).

The respondent does not contest any of those factual findings in this appeal. Rather, her appeal is centered entirely on an exchange that transpired in the middle of trial regarding the potential testimony of her father, J. Approximately halfway through the evidentiary stage of that proceeding, the court took a brief recess at the request of the respondent. When trial resumed, the following colloquy transpired:

"The Court: Good afternoon. The court notes the return of those previously present. And there is a new gentleman sitting in the back. Your name, sir?

"[J]: I'm the father of [the respondent].

"The Court: Any objection to [J's] presence?

"[The Father's Counsel]: We have no objection.

"[The Petitioner's Counsel]: As long as he . . . is not a witness.

"The Court: [J], you are expected to be a witness?

"[J]: Yes. For—I would like to be in the courtroom at this time. I just want to be present.

"The Court: I'm sorry?

"[J]: I just want to be present. I want to be a witness for her.

"The Court: Oh. Okay.

"[J]: Then I'll—

"[Catania]: I'm not intending to call him as a witness, Your Honor. I did attempt to speak with him in the lobby and have a conversation. Unless—

"[The Respondent]: Your Honor—

"The Court: [A]s I said, I don't want you to speak directly to the court. Talk to your attorney.

"[The Respondent]: I would—

"The Court: If there is something you want to say, please review it with your lawyer first, ma'am.

"[The Respondent]: I do not want to have Mr. Catania as my attorney.

"The Court: Well, that request is denied. We are almost at the end of trial. I'm not going to remove your counsel. So, thank you, ma'am. You may be seated. And [J] if you expect to be a witness, then I'm going to ask you to sequester yourself and remain in the lobby.

"[J]: Yes, sir.

"The Court: So—

"[J]: Both, Your Honor—both of the attorneys are not calling me as a witness. I want to be a witness on behalf of my daughter. Is that possible?

"The Court: Perhaps if [the attorney for the minor

children] or the [petitioner] or the father wishes to call you as a witness, but you do not have a right to just insinuate yourself into the process and call yourself a witness.

"[J]: That's why I'm asking the court if that's the procedure—

"The Court: Not unless one of the attorneys wishes to call you, sir. And if nobody intends to call you and you want to sit in the back, you're free to do so.

"[J]: Thank you, Your Honor.

"The Court: Okay. Thank you."

At that time, J exited the courtroom and Catania continued his cross-examination of a department case worker. J thereafter was not called as a witness to testify by any party, and the respondent did not raise any issue regarding Catania's representation in the four and one-half months that passed between the aforementioned colloquy and the court's November 20, 2015 judgments.[3]

Following the termination of her parental rights, the respondent commenced this appeal. Oral argument was held before this court on May 9, 2016. At the behest of the respondent, we subsequently ordered the trial court to articulate the factual and legal basis of its denial of her midtrial request to remove her attorney.

In its May 23, 2016 articulation, the court stated that "[t]he factual basis for [its] decision not to inquire as to the reason the [respondent] requested a different attorney was that the court had observed [her] demeanor throughout the trial. [The respondent] and Attorney Catania were in frequent collaboration and communication throughout the trial. Attorney Catania was in the process of a thorough cross-examination of the petitioner's last witness [and] requested a brief recess to discuss further with [the respondent] a Massachusetts service involved with [her]. Upon their return to court, an unknown man entered the courtroom, and identified himself as [the respondent's] father. He expressed his intention to be a witness for [the respondent]. Attorney Catania stated that he had not spoken with this man and did not intend to call him as a witness unless they had an opportunity to speak. [The respondent], in what appeared to the court to be an impetuous decision, and without speaking to Attorney Catania, requested a new lawyer. Her request appeared to be based upon pique rather than any perceived conflict. It was unrelated to the witness then testifying, and would have caused a disruptive delay. Legally, the court was aware that a parent's right to effective assistance of counsel in a termination proceeding is not rooted in the federal or state constitutions. . . . Attorney Catania was [the respondent's] statutorily appointed counsel since July, 2013, based upon [her] indigence. The court considered that [the respondent] was not

entitled to counsel of her own choice, especially as [her] request was in immediate response to a tactical decision by her attorney." (Citation omitted; internal quotation marks omitted.) The respondent thereafter filed a motion for permission to file a supplemental brief in response to that articulation, which this court granted.

On appeal, the respondent does not allege that Catania's legal assistance was ineffective in any respect.[4] She nevertheless claims that the court committed reversible error when it denied her midtrial request to remove Catania as her counsel. Specifically, the respondent maintains that, despite the content of that communication and the context in which it arose, the court was obligated to inquire further into the nature of her request. On the facts of this case, we do not agree.

I

As a preliminary matter, we note that the respondent asks this court to recognize a constitutional right to counsel in termination of parental rights proceedings pursuant to article first, § 10, of our state constitution.[5] Precedent and principles of restraint caution against so doing.

Our Supreme Court has recognized that "[i]n Connecticut, a parent who faces the termination of his or her parental rights is entitled, by statute, to the assistance of counsel. General Statutes § 45a-717 (b)."[6] *In re Alexander V.*, 223 Conn. 557, 569, 613 A.2d 780 (1992). The Supreme Court further has held, consistent with that statutory right, that "a parent in a termination of parental rights hearing has the right not only to counsel but to the effective assistance of counsel." *State* v. *Anonymous*, 179 Conn. 155, 160, 425 A.2d 939, 943 (1979); cf. *In re Yasiel R.*, 317 Conn. 773, 795, 120 A.3d 1188 (2015) (requiring trial court to advise respondent in termination proceeding of, inter alia, "the respondent's right to representation by counsel"); *Thiersaint* v. *Commissioner of Correction*, 316 Conn. 89, 148, 111 A.3d 829 (2015) (*Palmer*, *J.*, dissenting) (noting that "this court has specifically held that state law guarantees the right to the effective assistance of counsel even where it is not required by the federal constitution" and citing *State* v. *Anonymous*, supra, 155, as example); *In re Baby Girl B.*, 224 Conn. 263, 296, 618 A.2d 1 (1992) (noting that parent was "unable to exercise her right to counsel" in termination proceeding "without actual knowledge of the proceedings against her"). Given that firmly established statutory right to the effective assistance of counsel in termination proceedings, we fail to see how the existence of a corresponding state constitutional right alters the analysis of a challenge to the denial of a midtrial motion to remove court-appointed counsel.

We also are mindful of our obligation to not "engage

in addressing constitutional questions unless their resolution is unavoidable." *State* v. *McCahill*, 261 Conn. 492, 501, 811 A.2d 667 (2002); see also *In re Shanaira C.*, 297 Conn. 737, 754, 1 A.3d 5 (2010) (appellate courts have basic judicial duty to avoid deciding constitutional issue if nonconstitutional ground exists that will dispose of case); *City Recycling, Inc.* v. *State*, 247 Conn. 751, 758, 725 A.2d 937 (1999) (appellate courts "are bound . . . never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied" [internal quotation marks omitted]); *State* v. *Cofield*, 220 Conn. 38, 49–50, 595 A.2d 1349 (1991) ("[c]onstitutional issues are not considered unless absolutely necessary to the decision of a case" [internal quotation marks omitted]); cf. *Parker* v. *Los Angeles*, 338 U.S. 327, 333, 70 S. Ct. 161, 94 L. Ed. 144 (1949) ("[t]he best teaching of this Court's experience admonishes us not to entertain constitutional questions in advance of the strictest necessity"). The present case is not one in which it is absolutely necessary to decide the merits of the respondent's state constitutional claim. To paraphrase *In re Jonathan M.*, 255 Conn. 208, 227–28, 764 A.2d 739 (2001),[7] even if we were to assume, without deciding, that the respondent had a right under article first, § 10, of the state constitution to the effective assistance of appointed counsel, she still cannot prevail under the applicable legal standard.

II

We therefore turn our attention to that legal standard. Appellate review of the denial of a request to discharge appointed counsel is governed by the abuse of discretion standard; *State* v. *Gonzalez*, 205 Conn. 673, 684, 535 A.2d 345 (1987); which requires this court to indulge every reasonable presumption in favor of the correctness of the court's action. *In re Glerisbeth C.*, 162 Conn. App. 273, 283, 130 A.3d 917 (2015), cert. denied, 320 Conn. 921, 132 A.3d 1094 (2016).

"There is no unlimited opportunity to obtain alternate counsel. . . . It is within the trial court's discretion to determine whether a factual basis exists for appointing new counsel. . . . Moreover, absent a factual record revealing an abuse of that discretion, the court's failure to allow new counsel is not reversible error." (Citations omitted; internal quotation marks omitted.) *State* v. *Drakeford*, 202 Conn. 75, 83, 519 A.2d 1194 (1987); see also *State* v. *Williams*, 102 Conn. App. 168, 205, 926 A.2d 7 (trial court has broad discretion in determining whether circumstances warrant appointment of new counsel or dismissal of existing counsel), cert. denied, 284 Conn. 906, 931 A.2d 267 (2007).

The respondent's claim concerns the adequacy of the trial court's response to her midtrial request to remove Catania as her counsel. Although the court "has a responsibility to inquire into and to evaluate carefully all substantial complaints concerning court-appointed

counsel"; *State* v. *Robinson*, 227 Conn. 711, 726, 631 A.2d 288 (1993); our Supreme Court has held that a request to discharge appointed counsel must be accompanied by "a substantial reason" therefor. *State* v. *Drakeford*, supra, 202 Conn. 83; see also *State* v. *Gonzalez*, supra, 205 Conn. 683 ("[e]ven if the defendant's repeated complaints regarding counsel are considered an attempt to discharge counsel, the defendant never offered a substantial reason"); *In re Isaiah J.*, 140 Conn. App. 626, 633–34, 59 A.3d 892 (request to remove and replace court-appointed counsel must be supported by substantial reason), cert. denied, 308 Conn. 926, 64 A.3d 333, cert. denied sub nom. *Megan J.* v. *Katz*,   U.S.   , 134 S. Ct. 317, 187 L. Ed. 2d 224 (2013). When a litigant does not furnish a substantial reason, the court is not obligated to inquire further. *State* v. *Gonzalez*, supra, 685; *State* v. *Drakeford*, supra, 84.

For that reason, appellate courts reviewing claims assailing the trial court's failure to inquire into a request to discharge counsel "must distinguish between a substantial . . . request for new counsel pursued in good faith, and one made for insufficient cause . . . ." *State* v. *Drakeford*, supra, 202 Conn. 82. "If the [request] at trial . . . fell short of a seemingly substantial complaint . . . the trial court *need not inquire* into the reasons underlying the defendant's dissatisfaction with his attorney." (Emphasis added; internal quotation marks omitted.) *State* v. *Robinson*, supra, 227 Conn. 725.

*Gonzalez* is instructive. In that case, the defendant at trial uttered a series of complaints regarding his appointed counsel, stating at various times that, " 'I don't want this guy anymore,' 'I don't want to see that guy anymore,' 'I don't want that lawyer either' . . . ." *State* v. *Gonzalez*, supra, 205 Conn. 682 n.6. Significantly, those complaints were never accompanied by "a substantial reason" for the discharge of his counsel. Id., 683. On appeal, the defendant nonetheless claimed that the trial court was "at the very least required to inquire into [his] request." Id., 684–85. The Supreme Court flatly rejected that claim, emphasizing that such an inquiry is necessary only "[w]here a defendant voices a seemingly substantial complaint about counsel . . . ." (Internal quotation marks omitted.) Id., 685. Because "[t]he defendant's eruptions at trial . . . fell short of a 'seemingly substantial complaint,' " the court concluded that "the trial court did not err in failing to inquire into the reasons underlying the defendant's dissatisfaction with his attorney." Id.

Unlike the defendant in *Gonzalez*, who "indicated his displeasure with his attorney" on "numerous instances"; id., 682; the respondent's request to discharge her counsel here consisted of a single, isolated outburst. Moreover, that request was untethered to any expression of a substantial reason. Because the respon-

dent never offered any reason, let alone a substantial one, for her request to discharge Catania, the trial court was under no compulsion to inquire further into the nature of that request. Id., 685. As our Supreme Court explained in *Drakeford*, a case in which the defendant, like the respondent here, "gave no substantial reason" for his request to remove court-appointed counsel, "[t]he court could have made further inquiry into the matter. Under the totality of the circumstances, however, the court acted well within its discretion" in declining to do so. *State* v. *Drakeford*, supra, 202 Conn. 84.

With respect to the totality of the circumstances, we further note that "appellate scrutiny of the trial court's inquiry into complaints concerning adequacy of counsel must be tempered by the timing of such complaints." *State* v. *Robinson*, supra, 227 Conn. 725. The respondent's complaint here arose in the midst of trial. Our courts "look with a jaundiced eye at complaints regarding adequacy of counsel made on the eve of trial, or during the trial itself." Id., 726. Accordingly, "[i]n order to work a delay by a last minute discharge of counsel there must exist exceptional circumstances." (Internal quotation marks omitted.) *State* v. *Drakeford*, supra, 202 Conn. 83–84. In its May 23, 2016 articulation, the court specifically found that the respondent's midtrial request to discharge Catania "would have caused a disruptive delay." The court also clarified that its response to the request to remove Catania was based on its observations of the respondent's "demeanor throughout the trial," as well as her relationship with Catania,[8] and emphasized that her request to discharge "was in immediate response to a tactical decision by her attorney" not to call her father as a witness. Under Connecticut law, "an exceptional circumstance is more than just [a litigant's] feeling of dissatisfaction" with counsel; *State* v. *Wood*, 159 Conn. App. 424, 435, 123 A.3d 111 (2015); including dissatisfaction with most tactical decisions, over which "defense counsel has the final word . . . ." Id., 434. "Differences of opinion over trial strategy are not unknown, and do not necessarily compel the appointment of new counsel." *State* v. *Drakeford*, supra, 202 Conn. 83; see also *State* v. *Vega*, 259 Conn. 374, 391, 788 A.2d 1221 (disagreement with attorney's strategic and tactical decisions not good cause), cert. denied, 537 U.S. 836, 123 S. Ct. 152, 154 L. Ed. 2d 56 (2002). The court found, and the record indicates, that Catania was hesitant to call J as a witness without first having the opportunity to speak with him. Any disagreement with that prudent tactical decision is neither a substantial reason nor an exceptional circumstance that would justify Catania's discharge in the middle of trial.

"A court is not required to dismiss an assigned attorney upon a [litigant's] mere whimsical demand . . . ." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Beaulieu*, 164 Conn. 620, 629, 325 A.2d 263

(1973). Such is the case here. Because the respondent did not offer a seemingly substantial reason to discharge Catania, and in light of the facts and circumstances of this case, we cannot conclude that the court abused its ample discretion in denying the respondent's midtrial request to remove her court-appointed counsel without further inquiry.

The judgments are affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** August 2, 2016, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The court also terminated the parental rights of the children's father, whom we refer to by that designation. Because he is not a party to this appeal, we refer to the respondent mother as the respondent.

We also note that, pursuant to Practice Book § 67-13, the attorney for the minor children filed a statement adopting the brief of the petitioner in this appeal. In that statement, the attorney averred that "[t]he children do have a significant interest in this matter, and it is unlikely that a new proceeding would have any other result. Any other outcome would only serve to delay their permanency."

[2] Approximately two years prior to trial, the court appointed Attorney Peter Catania as counsel for the respondent due to her indigence. Catania represented the respondent throughout the termination proceedings.

[3] The evidentiary portion of the termination proceeding transpired on July 9, 2015. Closing arguments were held two weeks later on July 23, 2015. The court rendered judgments from the bench four months later on November 20, 2015.

[4] In her principal appellate brief, the respondent states: "To be clear, the respondent . . . is not suggesting that trial counsel actually engaged in any behavior that was improper." Cf. *In re Isaiah J.*, 140 Conn. App. 626, 636, 59 A.3d 892 (in addition to challenging court's denial of request to remove court-appointed counsel, respondent claimed "that she received ineffective assistance of counsel"), cert. denied, 308 Conn. 926, 64 A.3d 333, cert. denied sub nom. *Megan J.* v. *Katz*, U.S. , 134 S. Ct. 317, 187 L. Ed. 2d 224 (2013).

[5] Article first, § 10, of the constitution of Connecticut provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

[6] General Statutes § 45a-717 (b) provides in relevant part: "If a party appears without counsel, the court shall inform such party of the party's right to counsel and upon request, if he or she is unable to pay for counsel, shall appoint counsel to represent such party. No party may waive counsel unless the court has first explained the nature and meaning of a petition for the termination of parental rights. . . ."

[7] Notably, the petitioner father in *In re Jonathan M.*, supra, 255 Conn. 224, claimed that "he had a constitutional right" under, inter alia, article first, § 10, of the Connecticut constitution "to the effective assistance of counsel throughout the termination proceedings"—the very claim advanced by the respondent in this appeal.

[8] Our consideration of the articulation provided by the trial court must be "mindful that, as a reviewing court, [w]e cannot retry the facts or pass upon the credibility of the witnesses." (Internal quotation marks omitted.) *In re Gabriella A.*, 319 Conn. 775, 790, 127 A.3d 948 (2015). In termination of parental rights proceedings, "[i]t is the judge in the courtroom who looks the witnesses in the eye, interprets their body language, listens to the inflections in their voices and otherwise assesses the subtleties that are not conveyed in the cold transcript." (Internal quotation marks omitted.) *In re Nevaeh W.*, 317 Conn. 723, 740, 120 A.3d 1177 (2015). For that reason, "[g]reat weight is given to the judgment of the trial court because of [its] opportunity to observe the parties and the evidence." (Internal quotation marks omitted.) *In re Samantha C.*, 268 Conn. 614, 627, 847 A.2d 883 (2003). The court's May 23, 2016 articulation plainly indicates that its determination that the

respondent had not furnished a substantial reason for the removal of counsel was predicated on such observations.

———————————————