******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

IN RE CEANA R. ET AL.*
(AC 40134)

Alvord, Kahn and Bear, Js.

*Syllabus*

The respondent father appealed to this court from the judgments of the trial court adjudicating his minor children abused and neglected. Three of the father's previously appointed attorneys were permitted to withdraw as counsel. Prior to approving the appointment of a fourth attorney, the trial court warned the father that if that attorney was later permitted to withdraw, he would not be appointed a fifth attorney and he would have to represent himself or hire outside counsel. During a subsequent hearing, the court approved the appointment of the father's fourth attorney, C, and issued the same warning to the father. A couple weeks after being appointed as counsel for the father, C filed a motion to withdraw her appearance, stating that it was impossible to establish an attorney-client relationship given the father's unreasonable demands, and the motion was denied by the trial court. During the hearing on C's motion, as well as during a subsequent hearing, the father was again warned by the court that he should not expect the appointment of a fifth attorney if C withdrew as counsel. On the first day of trial, the father advised the court that he had filed a grievance against C and requested permission for C to withdraw as counsel, which was denied by the court. Upon a request for reconsideration by C, however, the court permitted C to withdraw as counsel, stating that it considered the filing of the father's grievance as an act terminating C's representation. Thereafter, the court concluded that the father had knowingly and voluntarily waived his right to appointed counsel by his conduct, and it declined to continue the trial to another date. After the father subsequently failed to appear on a set trial date, the trial court entered a default against the respondent father and adjudicated the minor children abused and neglected. This appeal followed. *Held*:

1. The trial court did not abuse its discretion in permitting C to withdraw as counsel, as the court properly determined that a de facto termination of the attorney-client relationship occurred based on the respondent father's filing of a grievance against C in the juvenile proceeding: a parent has a statutory, not constitutional, right to appointed counsel in abuse and neglect proceedings, and the record demonstrated that the relationship between the father and C had been the subject of a motion to withdraw filed by C before trial commenced, that the father had inquired of the court whether he would be permitted to release C from representing him if some misconduct had occurred, and that, after learning of the grievance filed by the father, the court asked for a copy of the grievance, inquired at length as to why the father believed that C had violated her professional responsibilities, and asked C whether she could continue to represent the father, to which C replied that she could not; furthermore, given that the father had been warned numerous times that he would not be appointed a fifth attorney if C was permitted to withdraw, the court did not abuse its discretion by failing to issue another warning to that effect or in permitting C to withdrawn from representing the father.

2. The trial court did not abuse its discretion in finding that the respondent father had waived his statutory right to appointed counsel by his conduct; the father previously had been appointed four attorneys, all of whom were removed from the case due to an attorney-client conflict, the father requested that C be removed despite repeated warnings from the court that it would not provide him with a fifth attorney, he was aware that the withdrawal of C would mean that he would represent himself, as he had been expressly informed of that consequence by two different judges on at least four previous occasions, and he had a general understanding of legal proceedings and indicated that he understood the hazards associated with representing himself.

Argued September 7—officially released October 26, 2017**

Petitions by the Commissioner of Children and Families to adjudicate the respondents' minor children neglected, brought to the Superior Court in the judicial district of New Britain, Juvenile Matters, where the court, *Frazzini*, *J.*, granted the motion of the respondent father's appointed counsel to withdraw representation; thereafter, the matter was tried to the court; judgments adjudicating the minor children neglected, from which the respondent father appealed to this court. *Affirmed.*

*John C. Drapp III*, assigned counsel, for the appellant (respondent father).

*Daniel M. Salton*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*Opinion*

ALVORD, J. In this appeal, we are called upon to determine whether a parent in a neglect and abuse proceeding de facto terminated his court-appointed lawyer and whether that parent waived by his conduct his right to a fifth appointed lawyer. The respondent father, Pablo R., appeals from the judgments of the trial court finding that his two daughters, C.R.[1] and A.R., were neglected and abused.[2] On appeal, the respondent claims that the court abused its discretion in (1) permitting his appointed counsel to withdraw and (2) finding that he had waived his right to appointed counsel by conduct.[3] We affirm the judgments of the trial court.

The record discloses the following procedural history. In March, 2016, the petitioner, the Commissioner of Children and Families (commissioner), filed two motions for temporary custody and two neglect petitions, one for each of the respondent's children, C.R. and A.R. The petitions alleged that C.R. and A.R. were neglected and abused.[4]

Attorney Roger Chiasson was appointed to represent the respondent as his counsel and filed an appearance on March 10, 2016. Six weeks later, Attorney Chiasson filed a motion to withdraw his appearance, representing that the attorney-client relationship had broken down in that the respondent had sought advice from another attorney and had expressed that he was not happy with the advice and counsel being given by Attorney Chiasson. The court, *Frazzini, J.*, heard argument on the motion on May 11. Attorney Chiasson represented that the respondent had engaged in conversations with other lawyers, and, based on those conversations, had expressed to others that Attorney Chiasson may have been misleading him. The respondent objected to the withdrawal and claimed that this was the first time he was hearing of Attorney Chiasson's dissatisfaction with the relationship. The respondent claimed that he had spoken to other people for advice but denied that he had discussed legal matters. The court granted the motion and ordered that new counsel be appointed.

Attorney Elizabeth Potts Berman was appointed as the respondent's second counsel.[5] Shortly thereafter, Attorney Berman filed a motion to withdraw her appearance, representing that the attorney-client relationship had broken down irretrievably. During argument on July 20, the respondent objected to the withdrawal and again represented to the court that this was the first time he was hearing that "this relationship had any problem." The court, *Abery-Wetstone, J.*, granted the motion to withdraw and ordered that new counsel be appointed. However, Attorney Christine Rapillo from the Office of Public Defender informed the court that "because a number of the lawyers from New Britain have covered the case . . . we may have to look out-

side the New Britain panel to get someone . . . ."[6]

Attorney Joshua Michtom, an employee of the public defender's office, was appointed as the respondent's third counsel and filed his appearance on July 27, 2016. Less than two weeks later, on August 5, Attorney Michtom filed a motion to withdraw his appearance, in which he represented that the respondent had yelled at him after he refused to file certain motions that he deemed frivolous, unethical, and counterproductive. Attorney Michtom further represented that the respondent had registered a formal complaint against him with the Office of the Chief Public Defender and had indicated that he would like Attorney Michtom to withdraw on the basis that communication had broken down. Lastly, Attorney Michtom expressed a willingness to continue to represent the respondent, but noted that communication in the future might be impossible based on the respondent's "having indicated unequivocally" that he desired Attorney Michtom to withdraw. During a hearing on the motion on August 18, the respondent asserted a number of reasons in support of the request to withdraw, including that Attorney Michtom had been dishonest to the court and to the respondent, and that Attorney Michtom had represented him "without any understanding of the case." Attorney Rapillo again appeared, stating that there were no panel attorneys left in New Britain, and that the public defender's office could not, under its contracts with individual attorneys, require an attorney to accept an appointment in another jurisdiction. The court, *Abery-Wetstone, J.*, requested that the public defender's office appoint another attorney for the respondent.

The court then issued the following warning to the respondent: "You understand . . . this is your last chance. If you have a fight with the next attorney, you're not going to be able to get one." The court further cautioned: "Understand this is it. We don't have anybody else. You'll get one more lawyer. . . . If you have a disagreement with this next lawyer or this next lawyer feels abused or maligned by you, then you're going to have to represent yourself." The court instructed the parties to return on September 1, 2016, and stated that "I would like Mr. [R.] and new counsel here, because if he doesn't get new counsel, he's going to be instructed that he either has to file a pro se appearance or he has to hire counsel on his own."

Prior to September 1, 2016, Attorney Trudy Condio, a panel attorney from the Hartford Juvenile Court, was contacted by the public defender's office regarding appointment as the respondent's fourth counsel. At the hearing on September 1, which Attorney Condio had previously stated that she could not attend, the respondent indicated that he had not yet made a decision as to whether he wished to be represented by Attorney Condio, that he had been trying to set up a meeting

with her, and that she did not have a copy of the file yet. The court, *Abery-Wetstone, J.*, approved the appointment of Attorney Condio, stating that unless the court received a motion to withdraw from Attorney Condio, she would represent the respondent. The court warned that Attorney Rapillo "indicated that she was going to have a hard time replacing Attorney Michtom and she has provided counsel for Mr. [R.]. If you are dissatisfied with Ms. Condio . . . you are going to have to either file a pro se appearance indicating you're going to represent yourself or you're going to have to hire private counsel, because Ms. Rapillo represented to the court that she had no one else and this was the last person, if even she could get Ms. Condio."[7]

On September 16, 2016, Attorney Condio filed a motion for continuance and a motion to withdraw her appearance stating that it was impossible to establish an attorney-client relationship based on the respondent's unreasonable demands. Attorney Condio represented that although she had communicated with the respondent on four occasions, the respondent refused to meet with her before 5 p.m. and refused to meet with her without a third party present. Moreover, she claimed that the respondent insisted on meeting at his home.

On September 21, 2016, the court, *Abery-Wetstone, J.*, heard argument on Attorney Condio's motions. With respect to the respondent's insistence on a third party being present during attorney-client meetings, the respondent explained that he always had a third party present for his protection during his meetings with previous counsel and that he wanted to waive the attorney-client privilege. He also informed the court that he had a third party monitoring phone conversations "so there wouldn't be any issue of the he said/she said . . . ." Regarding the respondent's unwillingness to meet before 5 p.m., the respondent stated that although he was unemployed, he was busy with other personal, medical responsibilities that prevented him from meeting with Attorney Condio during business hours. The court ordered the respondent to meet with Attorney Condio with no one else present, between the hours of 9 a.m. and 5 p.m. on weekdays, and denied the motions for continuance and to withdraw.[8] After further argument, the court asked the respondent: "Mr. [R.], do you wish to keep this attorney or do you wish to represent yourself?" The court further inquired of the respondent whether he understood the potential danger of representing himself while his application for accelerated rehabilitation was pending in criminal court, to which the respondent replied, "Yes, I—that's why I told the court back in September 1, 2016, that I was not qualified to represent myself . . . ." The court then reminded the respondent that he previously had been warned: "If you couldn't get along with [Attorney Condio], you were going to have represent yourself because I'm not going to give you a fifth attorney."

Both parents were before the court for a hearing on October 14, 2016. On that date, the court, *Frazzini, J.*, permitted the mother's counsel to withdraw from representation based on the mother's filing of a grievance against that lawyer. The court rescheduled the trial, and addressed the respondent and the mother: "I'm telling you both right now, don't expect or believe that if you obtain a new lawyer by hiring them, or if you—if your lawyer seeks to withdraw, that a new lawyer would be appointed for you. Do not anticipate that; do not expect that. It would not happen." The respondent asked: "So Your Honor, so if we have an issue with misconduct or some issue that the lawyer violates Connecticut statute that we won't be allowed to obtain a new lawyer—a counsel? Is that my understanding?"[9] The court, stating that the respondent had a legal right to file a grievance, asked the respondent to present the grievance to the court first so the court could review the situation and determine whether the facts showed that the attorney had committed an act or failure to act that would necessitate withdrawal.

On the first day of trial, November 28, 2016, the respondent advised the court, *Frazzini, J.*, that he had filed a grievance against Attorney Condio because of failed communication and a lack of representation and stated: "I don't think it's appropriate that Ms. Condio now go forward in representing me or my—or my best interests . . . ." After hearing argument from the respondent and Attorney Condio, both advocating for withdrawal, the court stated that it had not found exceptional circumstances to justify discharging counsel at the last minute, which would cause a delay in trial, and ordered that evidence proceed. Attorney Condio noted further objection, and trial commenced. After the testimony of the first witness, Attorney Condio orally moved the court to reconsider, stating that the public defender's office had expressed concern that her continued representation could create further liability. Counsel for the Department of Children and Families (department) and counsel for the children both agreed that Attorney Condio should be permitted to withdraw, but both expressed concern that the trial should not be continued. The court then stated that it would "take the filing of the grievance as a—as an act terminating Attorney Condio's representation and allow you to withdraw."

After permitting Attorney Condio to withdraw, the court turned to the question of whether the respondent had waived his right to an appointed attorney by conduct. The respondent told the court that he was not stating that he was capable of representing himself, and he stated that he was "not an attorney" and was not "familiar with this process." The court continued the matter until the next morning and ordered the parties to file briefs addressing whether the respondent had waived his right to appointed counsel by virtue of his

conduct and, if so, whether the trial should proceed.

The next morning, the court, *Frazzini, J.*, heard argument from the department's counsel and the respondent as to whether the respondent had waived his right to appointed counsel.[10] The respondent stated: "[A]t no point did I ever indicate to this court or I'm telling you that now do I have the education or ability, or because I am indigent, to basically represent myself or seek outside counsel." The court concluded that the respondent had knowingly and voluntarily waived his right to appointed counsel by his conduct, and it declined to continue the trial to another date. The department then proceeded to call its witnesses. On the first day of trial, in the presence of the respondent, the court had set a number of court dates, including January 3, 2017. The respondent did not appear on January 3, and the trial continued. The court, *Frazzini, J.*, entered a default against the respondent and adjudicated C.R. and A.R. neglected and abused as alleged in the petitions. The court heard evidence as to disposition.

On January 11, 2017, the court issued its written memorandum of decision committing the children to the custody of the commissioner until such time as a subsidy to the foster parent could be approved, at which time guardianship of the children would be transferred. This appeal followed.

I

The respondent first claims that the court abused its discretion in permitting the respondent's fourth attorney to withdraw from representing him. Specifically, the respondent contends that his filing of a grievance against Attorney Condio did not require withdrawal from representation, especially given that the respondent's complaints were "vague and nothing more than disagreements with strategy and tactics." We disagree that the trial court abused its discretion in permitting Attorney Condio to withdraw.

We begin our analysis by setting forth principles surrounding the attorney-client relationship. "An attorney-client relationship is established when the advice and assistance of the attorney is sought and received in matters pertinent to his profession." (Internal quotation marks omitted.) *DiStefano* v. *Milardo*, 276 Conn. 416, 422, 886 A.2d 415 (2005). With respect to termination of the relationship, our Supreme Court has stated: "The formal termination of the relationship occurs when the attorney is discharged by the client, the matter for which the attorney was hired comes to a conclusion, or a court grants the attorney's motion to withdraw from the representation. A *de facto termination* occurs if the client takes a step that unequivocally indicates that he has ceased relying on his attorney's professional judgment in protecting his legal interests, such as hiring a second attorney to consider a possible malpractice

claim or filing a grievance against the attorney." (Emphasis added; footnote omitted.) *DeLeo* v. *Nusbaum*, 263 Conn. 588, 597–98, 821 A.2d 744 (2003); see also *Straw Pond Associates, LLC* v. *Fitzpatrick, Mariano & Santos, P.C.*, 167 Conn. App. 691, 719, 145 A.3d 292, cert. denied, 323 Conn. 930, 150 A.3d 231 (2016).

In the present case, the court concluded that the respondent's filing of a grievance constituted a de facto termination of the attorney-client relationship pursuant to *DeLeo*. In *DeLeo*, our Supreme Court adopted the continuous representation doctrine, pursuant to which the statute of limitations applicable to legal malpractice claims may be tolled when the plaintiff can show: "(1) that the defendant continued to represent him with regard to the same underlying matter; and (2) either that the plaintiff did not know of the alleged malpractice or that the attorney could still mitigate the harm allegedly caused by that malpractice during the continued representation period." (Emphasis omitted; footnote omitted.) *DeLeo* v. *Nusbaum*, supra, 263 Conn. 597. The first prong of the test prompted our Supreme Court to define termination of the attorney-client relationship, which it described as including de facto termination through the filing of a grievance against the attorney. Id., 597–98.

The respondent argues that the *DeLeo* court's definition of termination of the attorney-client relationship is limited to circumstances where the continuous representation doctrine is at issue. In so arguing, he points to the *DeLeo* court's statement that "[o]nce such a step has been taken, representation may not be said to continue for purposes of the continuous representation doctrine." Id., 598. The court continued: "A client who has taken such a concrete step may not invoke this doctrine, because such actions clearly indicate that the client no longer is relying on his attorney's professional judgment but instead intentionally has adopted a clearly adversarial relationship toward the attorney. Thus, once such a step has been taken, representation does not continue for purposes of the continuous representation doctrine." Id. We agree that *DeLeo* elucidated the termination of an attorney-client relationship in the context of continuous representation. However, this court finds that it was within the trial court's discretion to use *DeLeo* as guidance in its determination that a de facto termination occurred based on the respondent's filing of a grievance against his appointed counsel in a juvenile proceeding.

Although our appellate courts have not had occasion to consider whether de facto termination based on the filing of a grievance extends beyond the continuous representation doctrine, recently, this court in *Straw Pond Associates, LLC* v. *Fitzpatrick, Mariano & Santos, P.C.*, supra, 167 Conn. App. 719, described the *DeLeo* framework as "instructive in that it defines what

is meant by legal representation." Moreover, although not binding on our analysis, we note that the Superior Court has cited to *DeLeo*'s formal and de facto methods of termination in the context of determining the date representation terminated for purposes of a conflict of interest analysis under rule 1.7 of the Rules of Professional Conduct. See *Sullivan Construction Co., LLC* v. *Seven Bridges Foundation, Inc.*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-10-6005404-S (February 22, 2011) (51 Conn. L. Rptr. 517, 520–21).

The respondent relies solely upon two cases in support of his contention that the court abused its discretion in permitting Attorney Condio's withdrawal. Both cases addressed whether a conflict of interest posed by the filing of a grievance was sufficient to prove prejudice for purposes of determining whether counsel's assistance was rendered ineffective. See *State* v. *Vega*, 259 Conn. 374, 388–91, 788 A.2d 1221, cert. denied, 537 U.S. 836, 123 S. Ct. 152, 154 L. Ed. 2d 56 (2002); *Morgan* v. *Commissioner of Correction*, 87 Conn. App. 126, 127–28, 866 A.2d 649 (2005). In *Vega*, the court considered in a criminal case whether the defendant had been denied effective assistance of counsel in violation of the sixth amendment to the United States constitution as a result of the trial court's denial of counsel's motion to withdraw after the defendant had filed a grievance against him. *State* v. *Vega*, supra, 377, 380. The court noted that "the filing of a grievance in and of itself is insufficient to establish a violation of a defendant's *sixth amendment rights.*" (Emphasis added.) Id., 388. This court, in *Morgan* v. *Commissioner of Correction*, supra, 132–42, after extending sixth amendment protection to the statutory right to counsel in habeas proceedings, considered whether the petitioner had been denied effective assistance of counsel when the habeas court denied his motion to disqualify his attorney without inquiring into the nature of three grievances the petitioner filed. This court concluded that the trial court's summary denial of the motion to disqualify was improper, in that the court failed to inquire whether the nature of the grievances constituted a conflict of interest. Id., 142.

We conclude that *Vega* and *Morgan* do not compel the conclusion that the trial court abused its discretion in finding a de facto termination of the attorney-client relationship caused by the respondent's filing of a grievance. A parent has a statutory, not constitutional, right to appointed counsel in neglect and abuse proceedings. See *In re Zen T.*, 151 Conn. App. 724, 731, 95 A.3d 1258, cert. denied, 314 Conn. 911, 100 A.3d 403 (2014), cert. denied sub nom. *Heather S.* v. *Commissioner of Children & Families*, U.S. , 135 S. Ct. 2326, 191 L. Ed. 2d 991 (2015); *In re Tayler F.*, 111 Conn. App. 28, 47 n.8, 958 A.2d 170 (2008), aff'd, 296 Conn. 524, 995 A.2d 611 (2010). General Statutes § 46b-135 (b) provides

in relevant part that "[a]t the commencement of any proceeding on behalf of a neglected, uncared-for or abused child . . . the . . . parents . . . shall have the right to counsel, and shall be so informed by the judge, and that if they are unable to afford counsel, counsel will be provided for them. . . ." Moreover, the protections of the sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution have not been extended to a parent in a neglect proceeding. See *In re Tayler F.*, supra, 47 n.8 (distinguishing statutory right to confrontation from sixth amendment right to confrontation); see also *State v. Anonymous*, 179 Conn. 155, 159, 425 A.2d 939 (1979). Accordingly, the respondent's reliance on *Vega* and *Morgan* is inapt. See *In re Isaiah J.*, 140 Conn. App. 626, 640, 59 A.3d 892 (noting that respondent provided no legal basis to support argument that statutory right to counsel in termination of parental rights proceeding carries with it the same sixth amendment protections accorded to criminal proceeding), cert. denied, 308 Conn. 926, 64 A.3d 333, cert. denied sub nom. *Megan J.* v. *Katz*, U.S. , 134 S. Ct. 317, 187 L. Ed. 2d 224 (2013).[11]

Moreover, the court's decision to recognize a de facto termination must be viewed in light of the full record of the proceeding. The relationship between the respondent and Attorney Condio, the respondent's fourth appointed attorney in approximately six months' time, had been the subject of a previous motion to withdraw filed by Attorney Condio approximately two months before trial commenced. In the interim, the respondent witnessed the withdrawal of the mother's counsel based on the mother's filing of a grievance, and at that hearing had inquired of the court whether he would be permitted to "release" his attorney if some misconduct had occurred. At trial, after learning from the respondent himself that he had indeed filed a grievance, the court asked whether the respondent had a copy of the grievance, inquired at length of the respondent as to why he believed Attorney Condio had violated her professional responsibilities, and inquired of Attorney Condio whether she believed she could continue to represent the respondent, which she stated she did not.

At oral argument before this court, counsel for the respondent clarified that his claim is that the trial court should have once again told the respondent that if Attorney Condio was permitted to withdraw, he would not be appointed a fifth attorney. Given that the respondent had been given this exact warning numerous times on multiple occasions prior to the filing of his grievance against Attorney Condio, we cannot conclude that the trial court abused its discretion in not issuing the warning yet again or in permitting Attorney Condio to withdraw from representation.

II

The respondent's second claim is that the court abused its discretion in finding that he had waived his right to appointed counsel by virtue of his conduct. Specifically, the respondent claims that the record is clear that he wanted representation and that his conduct did not rise to the level that has been found to justify a waiver of counsel in other cases. We hold that the court did not abuse its discretion.

We begin our analysis by setting forth the governing legal principles regarding the right to counsel, self-representation, and waiver in the context of a neglect proceeding. As noted in part I of this opinion, a parent has a statutory right to appointed counsel in a neglect proceeding. See General Statutes § 46b-135. A parent may waive his statutory right to counsel in favor of representing himself. See *In re Zowie N.*, 135 Conn. App. 470, 483, 41 A.3d 1056, cert. denied, 305 Conn. 916, 46 A.3d 170 (2012). "Waiver, of course, is the intentional relinquishment of a known right. . . . [A] proper waiver of counsel must be intelligent and voluntary and . . . its basis, having been clearly determined by the trial court, should appear on the record." (Citation omitted; internal quotation marks omitted.) *In re Daniel A.*, 150 Conn. App. 78, 86, 89 A.3d 1040, cert. denied, 312 Conn. 911, 93 A.3d 593 (2014). "[T]he determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. . . . This important decision rests within the discretion of the trial judge. . . . Our task, therefore, is to determine whether the court abused its discretion in allowing the defendant to discharge his counsel and to represent himself." (Internal quotation marks omitted.) Id., 88.

Although a parent has a statutory right to counsel in a neglect proceeding, "[t]here is no unlimited opportunity to obtain alternate counsel. . . . It is within the trial court's discretion to determine whether a factual basis exists for appointing new counsel. . . . [A]bsent a factual record revealing an abuse of that discretion, the court's failure to allow new counsel is not reversible error. . . . Such a request must be supported by a substantial reason and, [i]n order to work a delay by a last minute discharge of counsel there must exist exceptional circumstances. . . . A request for the appointment of new counsel . . . may not be used to cause delay." (Citation omitted; internal quotation marks omitted.) *In re Isaiah J.*, supra, 140 Conn. App. 633–34.

The court in this neglect and abuse proceeding made the following finding on the record: "In the circumstances here, I find that there has been a knowing and voluntary waiver of the right to appoint a counsel. I've indicated the basic, the general background facts, but in summary they include the fact that Mr. [R.] has had

four appointed attorneys. All were removed at some level because of a client-attorney conflict. He was told the last time an attorney had been appointed that a new lawyer would not be automatically appointed. He was assured that the court would continue to monitor attorney conduct, and that if there was a legitimate claim of attorney misconduct with an action that warranted discharge of counsel, that the court would act in that way, but after [the mother] had filed a grievance, that has necessitated the discharge of [her attorney]. He was specifically reminded to present any claim to the court first. And the reason for presenting it to the court first was so that the almost automatic de facto termination of a discharge of attorney that occurs by the filing of the grievance could be . . . avoided and the court would have an opportunity to ascertain whether the complaints and the dissatisfaction of a person being represented by a lawyer were sufficient, that they met the standards for discharge of that lawyer. It's the court's duty to ensure that people who have counsel have competent, qualified and effective counsel. And I assured him that I would review any claim of misconduct, and that the assured filing of the grievance would not be that. So I find that the conduct has waived his right to an attorney . . . ."

The respondent concedes that waiver may be implied by conduct, but argues, based on out-of-state cases addressing forfeiture of the constitutional right to counsel, that the respondent's conduct has not risen to the level that has been found by sister courts to constitute a waiver of counsel. The cases relied upon by the respondent all involve criminal or habeas proceedings and violence, or threats thereof, by the defendant against appointed counsel.[12] None of these decisions supports a conclusion that the court here abused its discretion in concluding that the respondent had waived his statutory right to counsel.

This court's decision in *In re Daniel A.* is instructive. There, the court permitted the respondent's second attorney to withdraw from representation after the court informed the respondent that it would not appoint a third counsel if it granted the motion to withdraw. *In re Daniel A.*, supra, 150 Conn. App. 94. The respondent said he would represent himself, and the respondent's counsel remained present as standby counsel. Id. In considering whether the respondent's election to represent himself was voluntary, this court considered the trial court's familiarity with the respondent, the respondent's general understanding of legal proceedings and tactics, including that the respondent had made suggestions to counsel regarding cross-examination tactics and demonstrated a familiarity with the allegations of the petition to terminate his rights, and the respondent's understanding of the gravity of the proceedings. Id., 94–95.

In the present case, the record is clear that the trial court was familiar with the respondent as a result of presiding over previous proceedings in the neglect and abuse case.[13] On the first day of trial, the respondent requested that his fourth appointed attorney be removed despite repeated warnings from the court that it would not provide him with a fifth attorney. The respondent was aware that the withdrawal of Attorney Condio would mean that he would represent himself, having been expressly informed of this consequence by two different judges on at least four previous occasions. Moreover, the record shows a general understanding of legal proceedings, in that the respondent's frustration with Attorney Condio stemmed, in part, from certain motions he wished to file, evidence he wished to obtain, and exhibits he wished to introduce. The record also shows that the respondent indicated that he understood the hazards associated with representing himself. Lastly, the record indicates that the respondent understood the gravity of the proceedings; he stated he was seeking a "fair shot of trying to debunk these allegations about neglect and abuse."

Here, as in *In re Daniel A.*, "[a]lthough the record indicates that the respondent did not state, in so many words, that he no longer desired counsel, he engaged in a course of conduct that demonstrated that he knew what he [was] doing and [that] his choice [was] made with eyes open . . . ." (Internal quotation marks omitted.) Id., 95. The respondent's attempts to distinguish *Daniel A.* are entirely unavailing. As we concluded in part I of this opinion, the trial court did not abuse its discretion in not issuing the same repeated warning one final time. The record reveals that the respondent knew that his last minute request for Attorney Condio's withdrawal would mean that he would be representing himself. Accordingly, we cannot conclude that the court abused its discretion in finding that the respondent waived his statutory right to appointed counsel by conduct.

The judgments are affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** October 26, 2017, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] C.R. has since reached the age of majority, and the respondent concedes that the appeal is moot as to C.R.

[2] The children's mother also was a respondent in the neglect proceeding. She is not a party to this appeal, however. Accordingly, we refer to the children's father as the respondent.

[3] On appeal to this court, counsel for the children has adopted the position of the petitioner, the Commissioner of Children and Families.

[4] The petition as to C.R. alleged that she was neglected in that she was denied proper care and attention, physically, educationally, emotionally or morally. The petition as to A.R. alleged that she was neglected in that she

was being permitted to live under conditions, circumstances or associations injurious to her well-being. Both petitions alleged that the children were abused in that they were in a condition that is the result of maltreatment, including, but not limited to, malnutrition, sexual molestation or exploitation, deprivation of necessities, emotional maltreatment or cruel punishment.

[5] The exact date upon which Attorney Berman began to represent the respondent is unknown; however, she represented the respondent as early as June 1, 2016, on which date she appeared for the respondent in court.

[6] The panel referred to by Attorney Rapillo is a list of attorneys who have entered into assigned counsel contracts with the Division of Public Defender Services.

[7] The court reiterated its warning a second and a third time during the hearing: "If you choose not to have Attorney Condio represent you, you are certainly welcome to hire private counsel on your own or you're welcome to file an appearance and represent yourself, but that's it." "So if you choose not to have Ms. Condio represent you, then your choices are to hire private counsel or represent yourself."

[8] Also during the September 21, 2016 hearing, the court inquired as to the respondent's educational background:

"The Court: You do have a right to have an attorney. You don't have a right to pick your attorney. You've been through four attorneys. All four attorneys have asked to withdraw from your case. I'm finding that your demands of meeting after 5 p.m. [are] unreasonable, I'm finding that your demand that a third party be present is unreasonable, it violates ethics and it violates privacy laws for juvenile court documents. How far did you go in school, Mr. [R.]?

"[The Respondent]: I completed college. . . .

"The Court: And when did you get your degree?

"[The Respondent]: 2007 was the last one, AAS in criminal justice, and in '98, a BS.

"The Court: In what?

"[The Respondent]: In criminology.

"The Court: Criminology? And have you ever represented yourself in court proceedings before?

"[The Respondent]: Never. This is the first time that I've had a matter, a juvenile matter dealing with anything so—

"The Court: Well, I'm not just talking about juvenile matters. Have you ever been in civil court?

"[The Respondent]: Anytime? No, never, never had any issue."

[9] The respondent further inquired: "That's why I'm asking you, Your Honor, if you're stating whether we go through this trial, and if there's an instance where there is some kind of issue or there's a problem that constitute[s] with the Connecticut state statutes regarding the code of ethics within the attorney, that we would not be allowed to release that attorney."

[10] The respondent stated that he did not file a brief because he did not know "how to do one."

[11] In his reply brief, the respondent points to this court's citation in *In re Danyellah S.-C.*, 167 Conn. App. 556, 572, 143 A.3d 698, cert. denied, 323 Conn. 913, 150 A.3d 228 (2016), to *Vega* for the proposition that differences of opinion over trial strategy do not necessarily compel the appointment of new counsel. He contends that this citation, while not definitive, supports the argument that *Vega* applies to civil proceedings. We disagree.

[12] See *Gilchrist* v. *O'Keefe*, 260 F.3d 87, 100 (2d Cir. 2001) (holding that state court was not unreasonable in concluding that right to counsel in criminal proceeding could be forfeited based on petitioner's physical assault on defense attorney), cert. denied sub nom. *Gilchrist* v. *Smith*, 535 U.S. 1064, 122 S. Ct. 1933, 152 L. Ed. 2d 839 (2002); *United States* v. *Leggett*, 162 F.3d 237, 250–51 (3d Cir. 1998) (district court did not err in concluding that criminal defendant, by physically attacking counsel, engaged in "extremely serious misconduct" to forfeit right to counsel at sentencing hearing), cert. denied, 528 U.S. 868, 120 S. Ct. 167, 145 L. Ed. 2d 141 (1999); *King* v. *Superior Court*, 107 Cal. App. 4th 929, 949, 132 Cal. Rptr. 2d 585 (2003) (where fundamental constitutional right to counsel is at issue, proceeding to find forfeiture of that right requires procedural due process protections); *State* v. *Montgomery*, 138 N.C. App. 521, 524–25, 530 S.E.2d 66 (2000) (defendant had forfeited constitutional right to counsel through purposeful conduct and tactics to delay orderly processes of the court, including disruptive and assaultive behavior); *State* v. *Boykin*, 324 S.C. 552, 554, 558, 478 S.E.2d 689 (App. 1996) (defendant's conduct in one instance of verbal abuse and physi-

cal threatening not sufficient to constitute forfeiture of sixth amendment right to counsel); *State* v. *Holmes*, 302 S.W.3d 831, 848 (Tenn. 2010) (defendant had not forfeited his fundamental constitutional right to counsel as result of verbal threat and physical assault).

[13] In its oral decision, the court also noted that it had reviewed the court file, reviewed the memoranda of court hearings, and listened to audio recordings of three hearings.

---